We're just going to wait to hear from folks about... everybody to exit and get settled, so give it a minute. All right, Mr. Orozco. Thank you very much, your honors. May it please the court, Michael Orozco, law firm of Price v. Shulman & D'Arminio, on behalf of Appellant Defendants. In this matter, we have a district court judge's, magistrate judge's decision with regards to a bench trial regarding allegations, basically centering around plaintiff alleging in fraud throughout the entirety of its complaint, because it just simply reiterated its fraud count, its theft count, and its conversion count, and its unjust enrichment count, that the defendants engaged in a conspiracy and an intent to defraud the plaintiffs by way of either overcharging or, in essence, committing some sort of a theft by virtue of, you should have charged us X, but instead you charged us Y. Isn't there extensive evidence of overcharging here? I don't believe that there is extensive evidence of overcharging, your honor, and the reason I would say that is, is because you have two individual entities, two commercial entities that engaged in transactions over a period of time over which the plaintiffs never made any inquiries over what the plaintiff, what the defendants were actually charging. Well, I mean, look, the plaintiffs obviously were incredibly intelligent about this, but is there any real doubt that the defendants were significantly overcharging them and taking advantage of the fact that they weren't checking? Taking advantage of the fact that they weren't checking, your honor, wouldn't be the defendant's responsibility. That would be the plaintiff's responsibility. So if the plaintiffs were receiving these- The defendants got all this money by overcharging, by taking advantage of the plaintiff's sloppiness? Well, I think we're leapfrogging then into the unjust enrichment argument, which I'm perfectly happy to go into right now, and I think- Why should we reverse, is the question here. Well, I think there's two fundamental issues here. Obviously, the unjust enrichment is the first one, and under the case law, which is abundantly clear, unjust enrichment is not a catch-all. It is not meant to be, well, you don't succeed on your fraud claim, you don't succeed on your convergent claim, and you don't succeed on your theft claim, therefore, you're left with this. No, that's not what the case law says. The case law is abundantly clear. This is something that's to be used in those exceptional circumstances where you have either a mistake of law or some other issue, some other mistake of fact. Go ahead.  But that's what is happening here, right? There's no express contract that's being breached. No, there's no- But there's unjust enrichment because the Rhinoblades is taking advantage of their access to the credit card and just charge it, making up transactions and orders that were never made. No, not that the transactions were never made. Again, we're going to the overcharging aspect of it, which is, again, the fundamental difference between- But the district court makes a factual finding, numerous factual findings, that there was significant overcharging here, and is that clearly erroneous, that finding? I would find that it's not only clearly erroneous, Your Honor, but it's also not supported by the case law, which is cited by the magistrate judge. So the magistrate judge, in his conclusions, and specifically with regards to the case of- If they're charging $1,000 for a blade that otherwise costs $18, that's not overcharging? I don't think it was $1,000 for an $18 blade, but- Whatever it is, I'm picking numbers out of the air. If they're charging $500 for a saw that should only cost $18, that's not overcharging? No, I don't believe that it is. And here's where the problem is, though, Your Honor, and the problem is, is that when we look at the factual conclusions, which the court completely ignored the Garone testimony. So we have Mr. Galino, who comes in and says, I visited the warehouse, I came through, and I saw that there was these tons of blades, and based upon that, I knew that we were getting overcharged because we didn't need that many blades, and based upon the prices, that these blades were left in the boxes, therefore, we weighed them all, and we discovered that this is our computation. That computation is just so far convoluted, it's hard to even articulate what the plaintiff was trying to argue. But the magistrate judge ignored the fact that Mr. Garone came in, and he's the foreman, he's the guy who's going in. So I'm looking at this chart, and in the first year, 2004 to 2005, the plaintiff spent $12,000 on blades. In 2010, 2011, that number jumps up to $528,000 in blades. The testimony is, their business did not increase. How is that clearly erroneous for the trial judge to say they were overcharged? Two things, Your Honor. First, the testimony. The testimony that wasn't substantiated or corroborated with any documentary evidence whatsoever. And then second of all- The district judge accepted the testimony. But second of all, Your Honor- There's no documentary evidence on their side either, right? Because there's no documentation of any of these purported transactions. So it's true, you don't have all the documentation and there's testimony that there were a lot of orders, but the district court made a finding that that wasn't credible. And testimony that there wasn't an increase in orders and in business was credible. And why is that clearly erroneous if there is testimony that the district court was entitled to credit? Because there was also testimony that indicated there were fluctuations in prices. There's also testimony that indicated that there was an increase in the blades. But more importantly, let's look at the testimony of Mr. Garone, who testified. He's the foreman. And all of those blades were not kept in boxes, which completely refutes and the court ignores that. The court substantiates Mr. Garone's testimony in order to refute what my client says, but doesn't use Mr. Garone's testimony to invalidate what Mr. Galino says, that all of these blades were still in the boxes. And they weren't. They were just put into a bin. There is no way that the plaintiff could have arguably and even specifically, or let's say even generally calculated what their damages were. So again, unjust enrichment just doesn't fly, but the court specifically noted and used the case of Marini for the purposes of backing up its assertion that an unjust enrichment claim can be held against the defendant where there was an overage of charges. And that is exactly what the Marini case does not hold. The Marini case actually stands for the position that there must have been fraud. And that's actually in the court's decision, not the unjust enrichment. And that's what those defendants were found liable under. And in this case, the court specifically found that there was absolutely no evidence of fraud and that the plaintiffs couldn't sustain their burden because there was no inducement or material misrepresentation, certainly no theft, and obviously no conversion because these weren't the funds. Yes, but that is what the Corsello case then decided, Your Honor. In the Corsello case, the Corsello v. Verizon, the court stated specifically... Can I just back up a second? Sure. I understand you're disputing whether there was evidence that this happened. But if, in fact, a vendor has access to a customer's credit card and charges half a million dollars every year for products that were never delivered, you're saying that the customer has no cause of action to recover those monies? What's the right cause of action? That would have been for the plaintiff to figure out, Your Honor, but under the facts and circumstances... If you're telling me... So usually, if you can't meet the elements of a traditional tort claim, you make an unjust enrichment claim. So I think the answer is unjust enrichment. You're telling me that's not the answer. No. It seems to me there has to be an answer, because that is wrongful conduct. So I'm not going to find your argument persuasive unless you tell me what is the right cause of action under such circumstances. Another cause of action would have been to go after American Express, because under the allegations contained within the complaint, the plaintiff alleges that there were misrepresentations made by the defendant. The defendants get off scot-free. Scot-free? Yeah. Okay.         That's what you're saying?  That is not what I'm saying. What I am saying is that the plaintiff is left to the pleadings that they have. The attorneys in the incident matter took over the case from an original attorney, and they're left with what's contained within the four corners of the complaint. The four corners of the complaint have the five causes of action, three of which have been dismissed, and the only one remaining was the unjust enrichment claim. And again, the court found there's no fraud, there's no conversion, there's certainly no theft, and you're left with an unjust enrichment claim. But the Corsello case certainly stands for the... What you're saying, actually, is there's no claims for these traditional tort causes of action, and so therefore, there's an unjust enrichment claim. That's exactly the function of unjust enrichment. I believe the Corsello case doesn't state exactly that, Your Honor. It says, to the extent that the claims succeed, the unjust enrichment claim is duplicative. If the plaintiff's other claims are defective, an unjust enrichment claim cannot remedy the defects. And that's just it, right? So an unjust enrichment is a type of case where, as there's plenty of case law cited in the brief, you have a mistake. In other words, a plaintiff overpays somebody, and then they say, well, you're not entitled to that. Or the defendant obtains money that weren't theirs, or they should not have obtained, but for some other type of mistake. You had that in the... If the facts are, as the plaintiff's alleged, that Rhin-O-Blades got a whole lot of money because they charged for transactions that didn't occur, and they shouldn't have gotten that money, why doesn't that look like an unjust enrichment claim? I'm going to state here the case, again, citing Corsello v. Verizon. It is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff. Typical cases are those in which the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled. Yet, the plaintiff claims and cries to the rafters, fraud, fraud, fraud. Okay, I think I get that argument. Can I ask a question about the individual liability? Absolutely, Your Honor. You say that Uzari can't be individually liable for unjust enrichment because there was an alter ego evidence, but doesn't the district court actually make a finding that Rhin-O-Blades basically is just dominated by Uzari, and he controls all of its operations, and he runs it for his own personal benefit? Isn't that what an alter ego evidence would be? I don't believe that's sufficient alter ego evidence, Your Honor. There's two different bases for the purposes of piercing the corporate bail. One is fraud, so we have no issue with regards to that, because the fraud claims are completely dismissed by the magistrate judge, and the next one is with regards to an alter ego. And there's plenty of case law that says there's a lot of different factors. In fact, there's a myriad of factors that the court could weigh. Okay, so what's missing? So if the district court makes a finding that there's complete domination by Uzari of the company, and that he's running it for his personal benefit, so there's abuse of the corporate form, that there should be alter ego liability? What Your Honor just said with regards to the personal benefit. What evidence was there that there was any personal benefit whatsoever? What evidence is there? That's a separate question. So I understand there's an argument that you can have unjust enrichment if he gets a benefit that's separate from his role as a corporate officer, but I'm talking about alter ego liability. Correct. If you run a company for your own personal benefit, it's to insulate yourself from liability, but you treat it as a piggy bank or whatever, that's an abuse of the corporate form, and we have alter ego liability in that circumstance. Correct, which there was no evidence of, Your Honor, because the fact of the matter is... You're saying there wasn't evidence of it, but the district court clearly thought that that was what was happening here. Oh, it made a huge inference and a leap in order to get to that point, because it just simply said... So it's about the inferences the district court is making. It's not that the district court didn't think that's what was going on. Yeah, but there was no evidence of it. There was no evidence that he had any personal gain, there was no commingling, there was no failure to adhere to corporate form, there was no aspect with regards to common ownership, same use of the same offices, uses of corporate assets for personal assets, overlap in things such as, you know, I've got a... All right, I think I have that argument. You've reserved time for a minute, so we'll hear from you again. Thank you, Your Honor. Let's turn to the appellee, Ms. Corman. Good morning, Your Honors. This is absolutely an undressed enrichment claim. The fact that there were other causes of action pled within the complaint, which the court did not find that my clients should win on, does not in any way negate the fact that this is clearly an undressed enrichment claim. Also, there were a lot of factual findings, credibility determinations that were made here, and on this record, you really can't be a finding that those determinations were clear error. In terms of the measure of damages and the testimony of Mr. Galino, it's not exactly as appellant suggests. In fact, Mr. Galino just stated that he was doing a random yearly check through the warehouse, noticed these blades, and started making some inquiries. Upon making inquiries, he then saw the exorbitant amounts of money that was charged to his credit card, and then started asking questions and asking for invoices to back it up. This determination of damages was not based upon the particular weight of any of these products. Appellants raise straw man arguments and then knock them down, but they're not the arguments that were made, and they were not the arguments the court relied upon in making its determination. Simply, the court looked at, let's just take a look at the amount of money that was spent on blades prior to them getting the credit card, the amount made during the time they had our credit card information, and then subsequent, once the relationship was terminated, how much was then charged for blades in those following years. The court then took a very conservative approach and added additional money and said approximately $100,000 a year is all that we can at most say should have been charged for credit cards and came to their determination that way. It's not as if anybody weighed the information. There was discussion of UPS labels. That's not the measure of damages. That's not what the court relied upon. In terms of individual liability, the court made an absolute determination that everything that was done by Mr. Uzari was done for his personal benefit. He did everything that he could. He ran the entire ship. While he says he wasn't an owner and earned only $30,000 a year, the court clearly didn't credit any of his testimony. They didn't credit the testimony. Right. So I think that that's right. The district court makes findings that suggest that Uzari was dominating the corporation and running it for his personal benefit, but what about Angela? Was there evidence that she exercised control over the corporation? The evidence was – Participated in a fraud or something? The evidence – Does it just say that she got a benefit in her capacity as an owner of the corporation? Yes, she received the profits of the company. There were years she earned in excess of $250,000. She had sold check writing authority. The evidence shows that she had sold check writing authority. So she was absolutely a participant in – But that's just to say that she is a corporate officer, right? You need to make some additional findings to pierce the corporate veil, don't you? Honestly, all we have is really the discussion that she had all check signing authority. That's really what we have as to her. So we think that actually you need to make more findings to determine whether she can be liable for the liabilities of the corporation. There isn't enough on this record to make that determination. But I think we can look at the entirety of the structure of this company and what was happening and what they were doing. And what they were doing was just fleecing their customers. And I think this is the last example – Well, I'm not – whatever. I'm not going to announce the judgment. But assuming that the company is liable, the question then is can Angela be individually liable? And if she benefited just in her capacity as a corporate officer, it doesn't seem like she is liable for the conduct of the corporation in a personal capacity. The record, honestly, is not fully developed on that. But I would have to say – So I guess I ask this question. So if I think the district court didn't make sufficient findings for that, is there some showing that could be made if it went back to the district court? Or it just isn't – there just isn't sufficient evidence to say that she's individually liable for the conduct of the corporation? I don't know right now what would happen if we went back to the district court, quite honestly. We have a corporation that's been shut down. We don't really know what transpired in terms of the day-to-day operations. He said that he was the individual that really ran the show, even though if you look at the invoices, her name is all over all of the invoices. So I think that she took an equal role also, and that inference can be made also. If you look at the documents – But if he's the one who's dominating all the activities of the corporation, he could just be putting her name on all the documents, right? That could be. We don't know. Honestly, we do not know, based upon this record. But clearly there's no basis to overturn the finding of individual liability as to Mr. Uzari. And so I think we also need to look at the activities that were happening and the behavior. For example, once the action was commenced, they shut down this company. They're doing everything they can to hide behind corporate forms, and now he's in the diamond blade business still, yet he opens up on another corporation. The whole thing just stinks. And my clients were fleeced, and clearly they should have done more. They were not paying attention. They weren't minding the store. There were different people that had different functions, and this went on for 10 years. But at the end of the day, the defendants were unjustly enriched because of the mistakes that my clients made. It's a classic unjust enrichment, and my clients should be able to recover. So unless the court has any questions, I can rest on my briefs. Okay. Thank you very much, Ms. Korman. We'll turn back to Mr. Orozco on rebuttal. Thank you. With regards to the issues concerning personal liability, I do note for the second time here that, in essence, when what the court decided was, and this is coming directly from the court's opinion, it found that Mr. Uzari managed the relationship, communicated with Garone, charged the plaintiff's credit cards, and personally shipped the blades to the plaintiff based upon his estimates related to prior orders. There is zero evidence whatsoever that Angela had anything to do with any aspect of those things. In fact, the only thing that Mr. Uzari... But she's the owner of the corporation, right? That's correct. She's the owner of the corporation. But in order for there to be an alter ego theory, there has to be something more than just simply you're an officer, and therefore you can be personally liable for a finding of unjust enrichment under the case law. There has to be something more. Again, disregarding the corporate entity, failing to keep records, personally benefiting from it. And the court just simply jumps from, well, you're an officer, therefore you personally benefited, but there's zero evidence of that. What evidence would normally fit and, you know, would a court usually use for the purposes of imposing personal liability? They would have to find, again, that a defendant failed to adhere to corporate form, was using corporate assets for the purposes of personal benefits, taking basically money directly out of the corporate bank, piggy bank, and using it for personal benefits. And there's absolutely no evidence of that here, both as to Mr. Uzari, but also as to Mrs. Uzari. And that's why we submit that there was insufficient evidence to justify finding a personal liability. Unless there's any other questions? Thank you very much. Thank you very much. Mr. Orozco, the case is submitted.